IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MIKE APONTE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 08 C 6893 |
| | ) | |
| CITY OF CHICAGO, a Municipal Corporation, | ) | Judge Virginia M. Kendall |
| and Chicago Police Officers M. ACOSTA and | ) | |
| E. JONES, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Mike Aponte ("Aponte") filed a ten-count complaint against Defendant the City of Chicago ("the City") and Chicago Police Officers Mario Acosta ("Acosta") and Erin Jones ("Jones") (the "Officers"). On July 7, 2009 this Court dismissed Counts VII through X of Aponte's Complaint, holding that Aponte's Illinois state law claims were time-barred by the applicable statute of limitations. (*See* R. 33.) The remaining six counts of Aponte's Complaint are: Counts I and II allege violations of the Fourth Amendment for use of excessive force and illegal search and seizure under 42 U.S.C. § 1983; Counts III and IV allege conspiracy to violate Aponte's constitutional rights pursuant to 42 U.S.C. § 1983 and § 1985; Count V alleges a violation of the Eighth and Fourteenth Amendments under 42 U.S.C. § 1983 for failure to attend to Aponte's medical needs; and Count VI alleges that the City is liable for the conduct of the Defendant Officers pursuant to 745 ILCS 10/9-102. Defendants moved for summary judgment on all counts. For the reasons stated below, Defendants' Motion for Summary Judgment is granted in part and denied in part.

## STATEMENT OF FACTS[1]

The City is a municipal corporation incorporated under the laws of Illinois. (Pl. 56.1 Resp. ¶ 1.) At the time of the arrest that forms the basis of this action, the Officers were employed by the City as sworn police officers. (Pl. 56.1 Resp. ¶ 2.) On December 16, 2006, Aponte met with Santos Pena ("Pena") at Pena's automobile repair business—the reasons for the meeting are disputed, but irrelevant to Aponte's claims in this lawsuit—and an altercation ensued. (Pl. 56.1 Resp. ¶ 8.) Pena pointed his finger at Aponte, touching Aponte's nose "like a little kid." (Def. 56.1 Ex. 2, Deposition Testimony of Mike Aponte, at 43:6-10.) (hereinafter "Aponte Dep.") Aponte responded by slapping Pena twice. (Pl. 56.1 Resp. ¶ 9.) Pena then ran to the business's office and telephoned the police. (Pl. 56.1 Resp. ¶ 11.) The Officers responded to a radio call for battery and went to the scene. (Def. 56.1 Resp. ¶¶ 5, 49.) Aponte, having previously left the scene, called Pena and was informed that the police had responded. (Def. 56.1 Resp. ¶ 6.) Aponte then returned to the scene in his truck.[2] (Pl. 56.1 Resp. ¶ 7.)

Upon arriving at the scene, the Officers noticed that Pena was scared and upset. (Pl. 56.1 Resp. ¶ 51.) Officer Jones testified that Pena had redness and swelling on his face when she first

---

[1] Throughout this Opinion, the Court refers to the Parties' Local Rule 56.1 Statements of Undisputed Material Facts as follows: citations to Defendants' Statement of Uncontested Facts have been abbreviated to "Def. 56.1 Ex. ___."; citations to Aponte's Response to Defendants' Statement of Uncontested Facts have been abbreviated to "Pl. 56.1 Resp. ¶ ___."; and citations to Defendants' Response to Aponte's Statement of Additional Facts have been abbreviated to "Def. 56.1 Resp. ¶ ___."

[2] The parties dispute whether Aponte returned to the scene alone. Officer Jones testified at deposition that she could not recall whether anyone else was in the truck with him, Officer Acosta testified that Aponte must have been alone because anyone who arrived with him would have been included in the report of the incident, and Aponte testified that he was driven back to the business by his nephew, Joel Diaz. (*See* Def. 56.1 Resp. ¶ 7.) Portions of Aponte's deposition also reflect that Diaz may have witnessed the Officers' subsequent treatment of Aponte during the arrest. (*See, e.g.,* Aponte Dep. 75:2-76:21.) If a deposition of Diaz was ever taken that would clarify whether he was present or absent, neither party submitted it to the Court in connection with their Rule 56.1 statements.

encountered him.[3]  (Def. 56.1 Ex. 3, Deposition Testimony of Officer Erin Jones, at 12:12-14.) (hereinafter "Jones Dep.")  After the Officers spoke with Pena, with Officer Acosta acting as a translator, Officer Jones left the office in order to get a general offense case report from her vehicle. (Pl. 56.1 Resp. ¶¶ 30-31; Jones Dep. 16:2-6.)  Aponte arrived as Officer Jones was returning to the office, and both Officers subsequently encountered Aponte outside the office door.  (Jones Dep. 16:9-20; Aponte Dep. 52:8-11.)  Aponte concedes that the Officers approached Aponte without placing their hands on their weapons and were not carrying tasers.  (Pl. 56.1 Resp. ¶ 55.)

There are significant factual disputes concerning the subsequent sequence of events.  Aponte testified during his deposition that upon his return to the scene, he exited his truck with his hands up and was greeted by Officer Acosta, who "aggressively" placed Aponte's arm behind his back and said: "You're going to fucking die today, you fucking spic."  (Aponte Dep. 53:13-54:1.)  Aponte responded by saying to Officer Acosta: "Sir, I just want to know what's going on."  (Aponte Dep. 54:18-19.)  Aponte testified that although Officer Acosta never told Aponte he was under arrest, he did not struggle or try to pull away from Officer Acosta except for possibly pulling his arms away when Acosta attempted to slam him onto the squad car.  (Aponte Dep 54:5-7; 55:18-23.)

Aponte further testified that Officers Acosta and Jones then proceeded to pin him on the ground.  (Aponte Dep. 57:8-17.)  Aponte was handcuffed during the entire time that he was on the ground; nevertheless, Officer Acosta pinned him to the ground with a knee to the throat or forehead and Officer Jones pinned him with her knee to his groin.  (Aponte Dep. 58:14-60:5.)  Officer Jones

---

[3] In disputing this fact, Aponte cites to an exhibit attached to the Defendants' Local Rule 56.1 Statement, consisting of photographs of Pena taken on the day of the incident in support of his denial that Pena had facial injuries. In addition to being unauthenticated and undated, the photographs are of poor quality, poorly colored, and fail to clearly demonstrate the absence of any swelling, redness, or other facial injury.  Aponte has presented no other testimony supporting his contention that Officer Jones's observations of Pena's injuries are not credible.

threw a small rock or stone at Aponte's forehead while he was pinned to the ground. (Aponte Dep. 60:11-17.) When Aponte moved his legs underneath the officers in an effort to breathe, Officer Acosta discharged his pepper spray into Aponte's nostrils while placing his knee on Aponte's throat. (Aponte Dep. 64:15-22.)

Subsequently, according to Aponte's testimony, the Officers then threw him into the squad car, upon which he screamed that he couldn't breathe and asked that the window be opened. (Aponte Dep. 73:12-17.) Officer Acosta responded with further racial slurs, profanity, and threats that Aponte wouldn't be able to sue him because Aponte would be dead. (Aponte Dep. 73:19-74:4.) Aponte continued to feel unable to breathe, so he hit his head against the squad car window, breaking the window—apparently in order to gain fresh air. (Aponte Dep. 83:20-23.) Another, unidentified and non-defendant officer, then took Aponte out of the squad car so that he could breathe. (Aponte Dep. 84:14-20.)

In contrast, Officer Acosta testified that it was Aponte who began the encounter with racial slurs, profanity, and death threats, by responding to Officer Acosta's direction to put his hands behind his back by saying "fuck you, spic. I've done federal time. I'll have you killed." (Acosta Dep. 30:19-31:1.) Officer Acosta then testified that when he tried to grab Aponte's arm, Aponte pulled away and refused to put his hands behind his back. (Acosta Dep. 46:22-24.) Officer Acosta then described a struggle to subdue Aponte, first from a standing position and then on the ground, during which Aponte was "still fighting, trying to get up" and "pulling his arms forward underneath him." (Acosta Dep. 47:4-21.) Officer Acosta did not testify that he handcuffed Aponte prior to the struggle on the ground.

Officer Jones testified that she also attempted to subdue Aponte during this struggle, first by holding on to one of his arms and then by attempting to assist Officer Acosta in subduing Aponte once the parties were on the ground. (Jones Dep. 23:7-9; 25:17-19.) Officer Jones's testimony does not describe any action of kneeling on top of Aponte's body or of throwing any pebbles or stones at his forehead.

The parties agree that Officer Acosta eventually used his pepper spray in the vicinity of Aponte's nose. (Pl. 56.1 Resp. ¶ 21.) Aponte testified that the blast of pepper spray lasted for fifteen to thirty seconds, following which he had a very difficult time breathing. (Aponte Dep. 70:20-72:1.) However, Officer Acosta testified that he discharged the pepper spray only in "one or two second bursts," and not for the extended period of time described by Aponte. (Acosta Dep. 51:11-15.) The parties also dispute the manner in which the pepper spray was deployed—Aponte testified that it was sprayed directly into his nose (Aponte Dep. 69:12-22); Officer Acosta stated that the spray was discharged from a distance of between one and five feet from Aponte's face (Acosta Dep. 94:16-20.)

It is undisputed that following the deployment of the pepper spray, Aponte was placed in the back of a squad car and then broke out a window of the car by striking it with his head. (Pl. 56.1 Resp. ¶¶ 46, 68.) After Aponte broke the squad car's window, the Officers called for the assistance of additional officers. (Pl. 56.1 Resp. ¶ 47.) An ambulance was not called to the scene to treat Aponte for any injuries. (Def. 56.1 Resp. ¶ 69.)

Aponte was subsequently removed from the squad car and transported to the local police station in another Chicago Police Department vehicle. (Pl. 56.1 Resp. ¶ 48.) He sought medical treatment from his personal doctor on the day following his release from jail, complaining of a

burning sensation in his nose resulting from the pepper spray and of a headache. (Aponte Dep. 129:15-130:23.) Aponte did not receive psychiatric or psychological treatment after his arrest. (Pl. 56.1 Resp. ¶¶ 16-17.)

Following the arrest, Officer Acosta prepared an arrest report and Officer Jones prepared a General Offense Case Report. (Pl. 56.1 Resp. ¶ 71.) Aponte was eventually charged with battery to Pena, resisting arrest, unlawful use of a weapon,[4] and criminal damage to property for breaking the window of the squad car. The criminal charges were eventually dismissed after several continuations of the case in state court. (Pl. 56.1 Resp. ¶ 26.)

## STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ.P 56(c). In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.,* 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 255 (1986). However, the Court will "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chi. Sch. Reform Bd. of Trs.,* 233 F.3d 524, 529 (7th Cir. 2000). Where a proposed statement of fact

---

[4] The unlawful weapon was a set of brass knuckles with an attached knife that the Officers testified they recovered during a protective patdown of Aponte following his arrest. (Jones Dep. 31:1-12.) Aponte denies that he had the knuckles at the time of his arrest, instead testifying that they were recovered from his truck following his arrest and belonged to someone else. (Aponte Dep. 112:18-113:20.) The weapon was not fingerprinted (*see* Pl. 56.1 Resp. ¶ 67) and there is no record that an inventory search of Aponte's truck was conducted after he was taken into custody. The Officers have submitted an inventory record listing the weapon that does not indicate whether the weapon was seized from Aponte's person or from his truck. (*See* Def. 56.1 Ex. 10.)

is supported by the record and not adequately rebutted, the Court will accept that statement as true for purposes of summary judgment. An adequate rebuttal requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Albiero v. City of Kankakee,* 246 F.3d 927, 933 (7th Cir. 2001); *Drake v. Minn. Mining & Mfg. Co.,* 134 F.3d 878, 887 (7th Cir. 1998) ("'Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.' ").

## I. Count I - Use of Excessive Force in Violation of the Fourth Amendment

Count I of Aponte's Complaint alleges that the Officers used excessive force to effectuate his arrest in violation of the Fourth Amendment. The Defendants argue that Aponte's resistance made their use of force objectively reasonable.[5] However, given the significant factual disputes surrounding the circumstances of Aponte's arrest, Defendants' Motion for Summary Judgment is denied, because the Court cannot hold as a matter of law that the force used was constitutionally reasonable.

To determine whether the force used to effect an arrest is unreasonable, a court must examine the "totality of circumstances" surrounding the incident. *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985). The Fourth Amendment's reasonableness test is an objective one. *Graham v. Connor*,

---

[5] The Officers pleaded qualified immunity in their Answer to Aponte's Complaint (*see* R. 20 at 15), but did not raise it during summary judgment briefing as a potential defense to liability. Qualified immunity is an affirmative defense that must be raised by a defendant. *See Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982). However, the burden is on the Defendants to not only plead the defense, but to adequately develop it for the Court's consideration. *See Walsh v. Mellas*, 837 F.2d 789, 799 (7th Cir. 1988) ("the defense of qualified immunity may be deemed as waived if not properly and timely presented before the district court"). Here, the Officers did not mention the potential applicability of the qualified immunity defense in any brief or filing after their Answer, and thus have waived the defense. *See id.*; *Lazzara v. Howard A. Esser, Inc.*, 802 F.2d 260, 269 (7th Cir. 1986) ("A contention included in an answer, but not pressed before the district court" is waived.).

490 U.S. 386, 396 (1989). Thus, reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* "The question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. Moreover, the reasonableness calculation "must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-97. Courts should consider factors such as "[t]he severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. In sum, "the excessive force inquiry 'looks to whether the force used to seize the suspect was excessive in relation to the danger he posed—to the community or to the arresting officers—if left unattended.'" *Estate of Escobedo v. Bender*, 600 F.3d 770, 780 (7th Cir. 2010) (quoting *McDonald v. Haskins*, 966 F.2d 292, 292-93 (7th Cir. 1992)).

Here, the parties disagree as to whether Aponte threatened the Officers and whether Aponte resisted arrest. After making all reasonable factual inferences in Aponte's favor, as is appropriate in a summary judgment setting, a reasonable jury could determine that the force used by Officer Acosta to effect Aponte's arrest was excessive in light of the circumstances. The Officers were responding to a complaint of criminal battery, and Pena demonstrated at least minor facial wounds when the Officers arrived. Aponte testified that the Officers initiated his arrest with racial slurs and profanity, that they did not tell him he was under arrest, and that Officer Acosta deployed his pepper

spray directly into his nostrils after he had done nothing more than respond politely to the Officers and attempt to clear his airway so that he could breathe.

That the Officers tell a completely different story, in which they responded to a profane, threatening, and struggling individual with a minimal level of force, refraining from use of their batons or other weapons, and only resorting to pepper spray after an extended on-the-ground attempt to subdue Aponte, does not, without more, entitle them to summary judgment on Aponte's excessive force claims. *See Gonzalez v. City of Elgin*, 578 F.3d 526, 539-40 (7th Cir. 2009) (admonishing district courts of the fact-intensive nature of the excessive force inquiry and the need to take the facts in the light most favorable to the plaintiffs, and holding that defendants' use of pepper spray and other physical force in a mass-arrest scenario could reasonably be found to constitute excessive force). In fact, summary judgment is "often inappropriate in excessive force cases" precisely because, as is the case here, "the parties typically tell different stories about what happened." *Catlin v. City of Wheaton,* 574 F.3d 361, 367 (7th Cir. 2009). Specifically, if the jury finds Aponte's version of events to be credible, then Aponte was a minor offender, who was arrested for a battery that did not cause severe injury, and who did not actively resist arrest. He was not threatening the safety of the officers or of bystanders at the time of his arrest, and was not attempting to flee from the scene.

Taking Aponte's version of the facts as true, Officer Acosta's use of the pepper spray at close range against a handcuffed suspect could reasonably be construed as excessive under *Graham* even if a reasonable officer might have construed Aponte's body movements, which he testified were

attempts to change position in order to clear his airway, as active resistance.[6] *See Greene v. Barber*, 310 F.3d 889, 898 (6th Cir. 2002) (use of pepper spray on an actively resistant suspect who refused to be handcuffed could be found excessive); *Park v. Shiflett*, 250 F.3d 843, 852-53 (4th Cir. 2001) ("the irresponsible use of pepper spray twice from close range" on a suspect who was unarmed held to be excessive use of force). In addition, Officer Acosta's use of the pepper spray for an extended period of time may reasonably be found to have constituted excessive force, even if a single short blast to subdue Aponte would not have been excessive. *See LaLonde v. County of Riverside*, 204 F.3d 947, 961 (9th Cir. 2000) (use of pepper spray "may be reasonable as a general policy to bring an arrestee under control," but "any reasonable officer would know that a continued use of the weapon or a refusal without cause to alleviate its harmful effects constitutes excessive force"). Defendants' Motion for Summary Judgment on Count I of Aponte's Complaint is therefore denied as to Officer Acosta.

The factual disputes also preclude summary judgment as to Officer Jones. "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396. However, although Jones's actions of kneeling on Aponte during the struggle and of throwing a small pepple at his forehead could have been reasonable, a jury could also find that Officer Jones's use of force was gratuitous and unnecessary to effect the arrest. Because the exact actions taken by Jones during the arrest are disputed, the question of whether the force that she exercised was reasonable must be left

---

[6] Because, as noted above, the Officers did not adequately present or brief the issue of whether they are qualifiedly immune for their actions in this arrest, the Court need not determine whether it is clearly established in this Circuit that use of pepper spray in these circumstances may constitute excessive force.

for a fact-finder to determine. Therefore, Defendants' Motion for Summary Judgment on Count I is denied as to Officer Jones.

Defendants' Motion for Summary Judgment as to Count I of Aponte's Complaint is therefore denied as to both Officers.

## II. Count II - Illegal Search in Violation of the Fourth Amendment

In Count II, Aponte alleges a second violation of the Fourth Amendment pursuant to 42 U.S.C. § 1983 arising from the alleged search of his vehicle. Aponte claims that the charge of unlawful use of a weapon arose from the seizure of a set of brass knuckles with a knife from the truck in which he returned to Pena's business after the arrival of the Officers. The Officers assert that the weapon was retrieved during a pat-down of Aponte following his arrest. (Acosta Dep. 105:10-12.) Aponte concedes in his Response both that the Officers had probable cause to arrest him for battery and that, if the Officers had searched his person—a fact not conceded in his account of events—such a search would have been a lawful incident of his arrest. (*See* R. 65, Resp. Br., at 6.) The question is thus whether, if the jury finds Aponte's claim that the brass knuckles were found in his vehicle and not on his person to be credible, he has presented sufficient evidence for the jury to also find that the search of his vehicle was a violation of the Fourth Amendment.

Defendants argue that an inventory search of a lawfully impounded vehicle, if conducted in good faith pursuant to standard procedures, is *per se* lawful under the Fourth Amendment, and that any alleged search of Aponte's vehicle would therefore have been lawful. *See Colorado v. Bertine*, 479 U.S. 367, 375-76 (1993); *People v. Hundley*, 619 N.E.2d 744, 745 (Ill. 1993). However, none of the undisputed facts in the record support Defendant's claim that any search of Aponte's truck would have been lawful as an inventory search of an impounded vehicle. The Defendants have proposed as an undisputed fact only that "[t]he vehicle was either towed or impounded," without specifying which occurred or on what grounds, and do not point to any factual circumstance or legal

authority that would have made such an impoundment lawful.[7]  (Def. 56.1 ¶ 45.)  In fact, the (unauthenticated) arrest report for Aponte submitted by Defendants as an exhibit in connection with their Rule 56.1 statements reflects that the truck was not impounded, but was towed, and makes no mention of any inventory search having been conducted.  (*See* Def. 56.1 Ex. 5 at 2.)  Thus, as the vehicle was by the Defendants' own evidence *not* impounded, a search of it could not have been lawful under the authority upon which Defendants rely, which allows for searches of impounded vehicles but makes no mention of vehicles which are merely towed by unspecified persons and not impounded by the police.  In sum, the Court cannot possibly find as a matter of law that any search of an impounded vehicle would have been lawful, because the Defendants have not presented any evidence satisfying the threshold requirement that the vehicle have been lawfully impounded.  *See South Dakota v. Opperman*, 428 U.S. 364, 375 (1976); *Hundley*, 619 N.E.2d at 745.

Defendants' Motion for Summary Judgment is therefore denied as to Count II of Aponte's Complaint, as on the basis of the evidence currently before the Court, a reasonable jury could find in his favor on his claim that the brass knuckles were retrieved subsequent to an unlawful search of his vehicle before it was towed.

---

[7] Defendants appear to argue in their Reply Brief in Support of their Motion for Summary Judgment that an impoundment of Aponte's truck would have been an incident of his arrest and therefore lawful.  (*See* R. 66 at 6). If Defendants are attempting to argue that the search of the vehicle was lawful under the "search incident to arrest" exception to the Fourth Amendment's warrant requirements, such an argument would be foreclosed by the Supreme Court's holding in *Arizona v. Gant* that officers may not conduct "a vehicle search incident to a recent occupant's arrest after the arrestee has been secured and cannot access the interior of the vehicle" unless they have reason to believe that the vehicle may contain evidence of the crime for which the arrest occurred. 129 S. Ct. 1710, 1714 (2009).  The Officers have made no argument that the truck would have, or possibly could have, contained evidence relevant to the alleged battery of Pena for which they came to arrest Aponte.

13

### III.  Count III - Conspiracy Pursuant to 42 U.S.C. § 1983

In Count III, Aponte alleges that the Defendant Officers conspired to deprive him of his constitutional rights by framing him for "criminal damage to property, unlawful use of a weapon, and resisting arrest" and to "deprive [him] of exculpatory evidence to which he was lawfully entitled and which would have led to a more timely exoneration of the false charges."  (Compl. ¶¶ 28-29). To establish a *prima facie* case of civil conspiracy under § 1983, Aponte must allege that the Officers had an express or implied agreement to deprive him of his constitutional rights, and must further allege an actual deprivation of his rights arising from overt acts in furtherance of the Officers' agreement.  *See Scherer v. Balkema,* 840 F.2d 437, 442 (7th Cir. 1988).

With respect to the alleged conspiracy to frame Aponte for criminal damage to property, unlawful use of a weapon, and resisting arrest, only the last charge could form the basis for a § 1983 claim.  The Officers clearly had probable cause to charge Aponte with criminal damage to property, as they witnessed him breaking the window of the squad car.  The Officers also had probable cause for the unlawful weapon charge, as they found the brass knuckles either on Aponte's person or in his vehicle, and possession of brass knuckles is illegal in the state of Illinois. 720 ILCS 5/24-1(a) ("A person commits the offense of unlawful use of weapons when he knowingly . . . possesses . . . any . . . metal knuckles or other knuckle weapon regardless of its composition . . . .").  Thus, because the Officers had probable cause to charge Aponte with criminal damage to property and unlawful use of a weapon, his constitutional rights were not violated when they did so.  *See Schertz v. Waupaca County*, 875 F.2d 578, 582 (7th Cir. 1989) ("[T]he existence of probable cause for arrest is an absolute bar to a Section 1983 claim for unlawful arrest, false imprisonment, or malicious prosecution.").  Because there would therefore be no underlying constitutional violation arising from

these two charges, Aponte cannot sustain a § 1983 conspiracy charge on the grounds that the Officers conspired to bring them. Defendants' Motion for Summary Judgment is therefore granted as to the criminal damage to property and unlawful use of a weapon aspects of Count III.

However, Aponte may be able to sustain a § 1983 conspiracy claim by arguing that the Officers manufactured a false charge of resisting arrest for which they did not have probable cause in order to cover up their use of excessive force against Aponte, and thereby violated his constitutional rights. Aponte's sole evidence in support of his claim that the Officers must have conspired to violate his civil rights by falsely charging him with resisting arrest is that Officer Acosta and Officer Jones's accounts of events, which so directly contradict his own, are too similar to be merely coincidental, and thus that the Officers must have colluded to cover-up their unlawful conduct. (*See* R. 65, Resp. Br., at 7.) Defendants argue that there is no evidence in the record of an agreement by the Defendant Officers, and that the Plaintiff has failed to establish a *prima facie* case of conspiracy.

Although a § 1983 conspiracy claim "certainly may be established by circumstantial evidence . . . such evidence cannot be speculative." *Williams v. Seniff*, 342 F.3d 774, 785 (7th Cir. 2003). Here, Aponte alleges that since the Officers' testimony regarding the events in question is largely consistent, the Officers must have conspired against him. While this evidence is highly circumstantial and there is no direct evidence that the Officers agreed to fabricate the charge, if the jury finds Aponte's account of events credible, then the largely identical accounts of the two Officers could be reasonably found to reflect some consultation between the Officers as to the content of those accounts. In so doing, the Officers would have agreed to violate Aponte's constitutional rights by manufacturing a false version of events and a false charge of resisting arrest

in order to conceal the true sequence of events, and would have actually violated his rights when the false charge was filed. *Cf. Johnson v. Moeller*, 269 Fed. App'x 593, 595 (7th Cir. 2008) (plaintiff had not shown evidence of a conspiracy among defendant officers where the arrest reports and other records demonstrated material inconsistencies). A reasonable jury that found Aponte's version of the story credible could, therefore, find that the Officers conspired to violate his constitutional rights by falsely charging him with resisting arrest. Defendants' Motion for Summary Judgment is therefore denied as to this aspect of the claims brought in Count III of Aponte's Complaint.

With respect to his claim that the Officers conspired to deprive him of exculpatory evidence relating to any of the three charges, however, Aponte has not pointed to any specific evidence to which he did not have access, nor has he sufficiently developed an argument that his criminal prosecution was unnecessarily dragged out by any affirmative acts of the Officers. Indeed, the undisputed facts show that the charges against him were dropped without the case proceeding to trial or other resolution on the merits, and Aponte can therefore not argue that his constitutional rights were violated by trial or conviction on false charges. Thus, the Defendants' Motion for Summary Judgment on Count III is granted with respect to all claims except for the claim of conspiracy to falsely charge Aponte with resisting arrest.

## IV.  Count IV - Conspiracy Pursuant to 42 U.S.C. § 1985

Count IV alleges that, motivated by racial animus, the Defendants conspired to deprive Aponte of his Constitutional rights to be free from unreasonable search and detention, to be free from excessive force, and to be ensured the equal protection of the laws. (Compl. ¶ 28.) The Defendants have mved for summary judgment on the grounds that Officer Acosta, who is of the

same race as Aponte, could not have been motivated by racial animus—Aponte's allegations that both Officers used racial slurs during the course of the arrest notwithstanding.

The Court need not decide this issue, however, because "[t]he function of § 1985(3) is to permit recovery from a private actor who has conspired with state actors," *Fairley v. Andrews*, 578 F.3d 418, 526 (7th Cir. 2009), and all of the Defendants here are state actors. Thus, as in *Fairley*, the § 1985(3) claim presented here "does not add anything except needless complexity." *Id.* To the extent that Aponte has presented viable claims in the other Counts of his Complaint, his constitutional rights are adequately protected via the mechanism of 42 U.S.C. § 1983, and his § 1985(3) claim is superfluous. Defendants' Motion for Summary Judgment is therefore granted as to Count IV of Aponte's Complaint, although the Court does not reach Defendants' argument in support of their Motion.

## V. Count V - Violations of the Fourteenth and Eighth Amendments

In Count V, Aponte alleges, pursuant to 42 U.S.C. § 1983, that the Officers violated the Fourteenth and Eighth Amendments by "deliberately, willfully, and wantonly inflict[ing] physical and psychological torture" on him during the arrest and during his time in police custody. In his Response to the Motion for Summary Judgment, Aponte indicates that Count V is intended to state a claim against the officers for causing injury by applying pepper spray at close range and then failing to attend to his medical needs. (*See* R. 65, Resp. Br., at 8-9.)

Claims brought by pretrial detainees who have not had a probable cause hearing are to be brought under the Fourth Amendment, and are not cognizable as Fourteenth Amendment claims.[8]

---

[8] Defendants repeatedly assert that "analysis under the Fourteenth Amendment is moot" because the Court has previously dismissed Aponte's state law claims. However, the Fourteenth Amendment is not raised here in relation to the state law claims; rather, the Fourteenth Amendment's due process clause is the constitutional provision that protects

*See Williams v. Rodriguez*, 509 F.3d 392, 403 (7th Cir. 2007). There is no evidence in the record that Aponte ever received a judicial determination of probable cause, and he testified that he was released from police custody on bond after, at most, two hours. (Aponte Dep. 128:21-24.) Additionally, an Eight Amendment claim may only be brought after a formal adjudication of guilt, as only after such a determination does the State "'acquire the power to punish with which the Eighth Amendment is concerned . . . .'" *Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 (quoting *Ingraham v. Wright*, 430 U.S. 651, 671-72 n. 40); *see Sides v. City of Champaign*, 496 F.3d 820, 828 (7th Cir. 2007) (the Eighth Amendment "does not apply until a suspect has been convicted"). Aponte was never found guilty of any of the charges brought as a result of the incident at issue here. Thus, Aponte's Count V is improperly pled to the extent that it attempts to state a claim under the Eighth or Fourteenth Amendments, neither of which apply here.

However, pretrial detainees who have not received probable cause determinations may bring claims regarding the conditions of their confinement under the Fourth Amendment, which protects against unreasonable seizures. *See Williams*, 509 F.3d at 403; *Lopez v. City of Chicago*, 464 F.3d 711, 718 (7th Cir. 2006). Although the parties have neither raised nor briefed the correct Fourth Amendment standard and its application to Aponte's claims, the parties have provided a factual basis sufficient for the Court to consider whether a reasonable jury could find that the Officers violated Aponte's Fourth Amendment rights by failing to attend to his medical needs after he was brought into police custody.

---

the rights of pretrial detainees. *See Bell v. Wolfish*, 441 U.S. 520, 535 n. 16; *Cavalieri v. Shepard*, 321 F.3d 616, 620 (7th Cir. 2003). The Fourteenth Amendment is inapplicable here not because Aponte's state law claims have been dismissed, but because Aponte did not receive a probable cause hearing.

In considering whether arresting officers have acted unreasonably in failing to attend to an arrestee's medical needs, four key factors must be considered. *See Williams*, 509 F.3d at 403; *Sides*, 496 F.3d at 828. The first factor measures whether the officer has received notice of the detainee's medical need either through the detainee's words or through observation of the detainee's physical symptoms. *See Sides*, 496 F.3d at 828. The second factor considers the severity of the medical need. *Id.* at 828. The seriousness of the medical need must then be balanced "with the third factor—the scope of the requested treatment." *Williams*, 509 F.3d at 403. Finally, police interests including "administrative, penological, or investigatory concerns" factor into the final determination of whether the officers' conduct was objectively reasonable. *Williams*, 509 F.3d at 403; *see Sides*, 496 F.3d at 828.

Here, if the jury finds Aponte's testimony to be credible, it would be reasonable to conclude that the officers had notice of Aponte's breathing difficulties both through his statements and through observation of his behavior. Both before and after Officer Acosta deployed his pepper spray, Aponte told the Officers that he could not breathe. (Aponte Dep. 58:16-18; 71:17-19; 73:15-17.) As a result of the pepper spray, his face was red and "full of mucous" at the time he was placed into the squad car. (Aponte Dep. 73:9-17.) Aponte also reported to the other officer who responded to the scene that he could not breathe. (Aponte Dep. 84:1-20.) Thus, the Officers were aware that Aponte was having difficulty breathing, were aware that pepper spray had been deployed at close range to his face, and thus should have been aware of his potential need for medical treatment.

The parties have not adequately briefed the third and fourth *Williams/Sides* factors due to their misapplication of an Eighth Amendment standard. The questions of whether Aponte required medical treatment at the time of his arrest, or whether police interests justified the Officers' failure

to treat him at the scene, must therefore be left for additional factual development at trial and for the jury's ultimate determination. Due to these omissions in the record and to the factual disputes regarding the severity of Aponte's medical condition and his need for medical treatment, the Court cannot hold as a matter of law that the Officers acted reasonably in failing to attend to Aponte's medical needs. Defendants' Motion for Summary Judgment is therefore denied as to Count V of Aponte's Complaint, liberally construed as bringing a claim under the Fourth Amendment for failure to treat serious medical needs.

## VI.  Count VI - 745 ILCS 10/9-102 Claim

In Count VI of his Complaint, Aponte alleges a state law claim for indemnification against the City, arguing that the Defendant Officers acted under the color of law and within the scope of their employment with the City of Chicago. However, his only viable claims against the Officers arise under 42 U.S.C. § 1983, and a "a municipality may not be held liable under § 1983 solely because it employs a tortfeasor." *Board of the County Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 403 (1997). Municipalities are not liable for § 1983 violations under a theory of *respondeat superior*, the only one present in Count VI of Aponte's Complaint. *See id.* Rather, the plaintiff must allege a municipal policy or custom that caused the injury. *See id.* at 403 (citing *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 694 (1978)). Aponte may have had a viable claim for indemnification under 745 ILCS 10/9-102 if any of his state law claims had survived the Defendants' earlier motion to dismiss; as his state law claims were all dismissed as time-barred and he has not presented a *Monell* claim against the City, his indemnification claim against the City must fail. Defendants' Motion for Summary Judgment is therefore granted as to Count VI of Aponte's Complaint.

## CONCLUSION AND ORDER

Defendants' Motion for Summary Judgment is granted in part and denied in part. The Motion is granted as to Counts IV and VI in their entirety. The Motion is denied as to Counts I, II and V in their entirety. The Motion is denied as to Count III insofar as it brings a claim for conspiracy to falsely charge Aponte with resisting arrest, but granted in all other respects.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: July 14, 2010